# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

```
------------------------------------------------------ x
                                                       :
ERMA I.[1],                                            :        3:21-CV-896 (RMS)
       Plaintiff,                                      :
                                                       :
V.                                                     :
                                                       :
KILOLO KIJAKAZI,[2] ACTING                             :
COMMISSIONER OF SOCIAL                                 :
SECURITY,                                              :
       Defendant.                                      :
                                                       :        DATE: November 30, 2022
                                                       :
------------------------------------------------------ x
```

## RULING ON THE PLAINTIFF'S MOTION TO REVERSE AND THE DEFENDANT'S MOTION TO AFFIRM THE DECISION OF THE COMMISSIONER

This is an administrative appeal following the denial of the plaintiff's application for Title II disability insurance benefits ("DIB"). It is brought pursuant to 42 U.S.C. § 405(g).

The plaintiff now moves for an order reversing and remanding the decision of the Commissioner of the Social Security Administration ("Commissioner") for the payment of benefits. (Doc. No. 11). In the alternative, the plaintiff seeks an order remanding her case for a rehearing. (*Id.*). The Commissioner, in turn, has moved for an order affirming her decision. (Doc No. 13).

---

[1] To protect the privacy interests of social security litigants while maintaining public access to judicial records, in opinions issued in cases filed pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), this Court will identify and reference any non-government party solely by first name and last initial. *See* Standing Order – Social Security Cases (D. Conn. Jan. 8, 2021).

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted, therefore, for Andrew Saul as the defendant in this suit. *See* 42 U.S.C. § 405(g).

For the following reasons, the plaintiff's motion for an order reversing or remanding the ALJ's decision is **GRANTED in part** and **DENIED in part**,[3] and the Commissioner's motion for an order affirming that decision is **DENIED**.

## I.   PROCEDURAL HISTORY

On January 29, 2019, the plaintiff filed an application for disability benefits claiming that she had been disabled since April 1, 2019, due to stroke and peripheral neuropathy.  (Doc. No. 10, Certified Transcript of Administrative Proceedings, dated September 20, 2021 ["Tr."] 28, 89).  The plaintiff's application was denied initially and upon reconsideration.  (Tr. 89-95, 97-103).  On December 15, 2020, a hearing was held before Administrative Law Judge ("ALJ") Matthew Kuperstein, at which the plaintiff and a vocational expert testified.  (Tr. 49-88).  On December 29, 2020, the ALJ issued an unfavorable decision denying the plaintiff DIB benefits.  (Tr. 25-39).  On May 26, 2021, the Appeals Council denied the plaintiff's request for review, thereby making the ALJ's decision the final decision of the Commissioner.  (Tr. 1).

On June 30, 2021, the plaintiff filed her complaint in this pending action.  (Doc. No. 1). On December 15, 2021, the plaintiff filed her Motion to Reverse the Decision of the Commissioner (Doc. No. 11) with a Statement of Material Facts (Doc. No. 11-2) and a brief in support (Doc. No. 11-1), and two exhibits (Doc. Nos. 11-3, 11-4).  On February 8, 2022, the Commissioner filed her Motion to Affirm (Doc. No. 13), with a responding Statement of Material Facts (Doc. No. 13-2) and a brief in support.  (Doc. No. 13-1).  The plaintiff did not file a response.  On October 3, 2022, the parties consented to the jurisdiction of a United States Magistrate Judge, and the case was transferred to the undersigned.  (Doc. No. 18).

---

[3] The Court grants the plaintiff's motion to remand the case for further administrative proceedings but denies with respect to the plaintiff's request for a remand for the calculation and award of benefits.

On June 17, 2022, the plaintiff's counsel filed a notice on the docket stating that the plaintiff had filed a successive application for DIB benefits on July 15, 2021, and that the Commissioner had granted that application. (*See* Doc. No. 15). The plaintiff's counsel also attached a June 13, 2022, Notice of Award from the Social Security Administration that was sent to the plaintiff, (*see* Doc. No. 15-1 at 1), stating that the Commissioner found that the plaintiff had become disabled on December 30, 2020. (*Id*.). Accordingly, the scope of the ALJ's review upon remand is limited to the alleged onset date of April 1, 2019, and December 30, 2020.

## II.   **FACTUAL BACKGROUND**

The Court presumes the parties' familiarity with the plaintiff's medical history, which is thoroughly discussed in the parties' respective statements of material facts. (*See* Doc. Nos. 11-2; 13-2). The Court cites only the portions of the record that are necessary to explain this decision. The plaintiff was 61 years old at her alleged onset date. (Tr. 97). On March 28, 2011, prior to the plaintiff's alleged disability onset date, she was treated for a cerebrovascular accident (stroke), following dizziness and some weakness on her left side. (Tr. 58, 570-592). On February 2, 2017, the plaintiff was diagnosed with peripheral neuropathy, lumbar disc degeneration, and right hip pain. (Tr. 593). In 2018, the plaintiff broke her foot following a fall requiring surgery, use of a CAM boot and light duty work. (Tr. 724). The plaintiff stopped working at the end of March 2019. (Tr. 326). During 2019 and 2020, the plaintiff continued to complain of symptoms of peripheral neuropathy and was referred to a neurologist. (*See, e.g.*, Tr. 21).

### A.       The Plaintiff's Hearing Testimony

On December 15, 2020, the ALJ held a telephonic hearing during which the plaintiff, her attorney, and a vocational expert ("VE") testified.  (Tr. 49).[4]   The plaintiff testified she stopped working in March of 2019.  (Tr. 59-60).   The plaintiff and her attorney clarified her alleged onset date was April 1, 2019, and not in January of 2019.  (Tr. 61).

As to her physical limitations, the plaintiff testified that her legs were "very unstable" and that she had upper body numbness that prevented her from doing tasks such as drying her hair. (Tr. 61).  She stated that she had pain "centralized" in her legs and that she could only stand between fifteen minutes to a half hour.  (Tr. 61, 71).  While she did not use a cane, she had had an elevator installed in her house in or around 2011 so that she could get up and down her stairs.  (Tr. 62, 66).  As to her abilities to perform daily household tasks, the plaintiff testified that she could put small loads of laundry into her machine but could not do so for larger loads and had difficulty transferring wet clothes from the washer to dryer.  (Tr. 62-63).  She could lift a ten-pound bag of groceries from her driveway to her house but no farther.  (Tr. 72).  She could also do other simple tasks such as running a dusting cloth over a dresser or loading a dishwasher.  (Tr. 62-63).  However, she required assistance from family members, such as her husband, to do other household tasks such as laundry, cooking, mowing her lawn, lifting heavy items while shopping, or cleaning her house, including scrubbing toilets and vacuuming.  (Tr. 62-64, 70).  She stated she could drive a car for half-an-hour without issues.  (Tr. 64).   She testified she could only lift five pounds at a time in the last year but that she used to be able to lift between ten to twenty pounds prior to that. (*Id.*).  She also testified that she had difficulty using her arms for movements such as typing and

---

[4] The hearing was conducted telephonically and without objection due to the circumstances presented by the COVID-19 pandemic.  (Tr. 51, 54).

was limited to thirty minutes of typing before she needed to stop.  (Tr. 66-67).   She explained that her activity level had declined over time and that, if she could, she would still be working.  (Tr. 67).

Upon examination by her attorney, the plaintiff explained that the reason she had to stop working was because she "was in charge of hazardous materials," and the stress had gotten to the point where she could not give her employer "what they needed" from her; she explained that her job was not the type of work that could be done fully from home, though she was given some accommodations to do so occasionally.  (Tr. 68).  She ultimately offered to train a replacement and testified that, toward the end of her career, her employer "had to give out [her] job to five different people to get it done."  (*Id.*).   The plaintiff had memory problems and "slowness" in her thinking which also impeded her work.  (*Id.*).  In addition, she had sleeping problems and had been prescribed hydrocodone, which gave her side-effects, including dizziness.  (*Id.*).  She also explained that she had tried therapy and a chiropractor, but that the effects of these treatments were limited.  (Tr. 71).

B.    The VE's Testimony

During the plaintiff's examination, the vocational expert, Theresa Hopkins, was not on the line; instead, the VE joined the hearing and was sworn in after the plaintiff's testimony was taken.  (Tr. 72-74).  The plaintiff's counsel lodged one objection to the VE's lack of experience in the national job market and reliance on third party sources, but this objection was overruled.  (Tr. 72-73).  The VE stated she had "read the file" regarding the plaintiff's work history.  (Tr. 75).  The ALJ first asked the VE to "summarize the claimant's past work," and the VE stated that, "in review of the file," her past relevant work included director of transportation as described by the Dictionary of Occupational Titles ("DOT") (DOT 184.117-014; SVP 8; sedentary).  (*Id.*) The VE

initially explained that the plaintiff performed the job at the light exertional level because she was "walking and stand[ing]" most of the day.  However, the VE then corrected herself after being questioned by the ALJ and opined that the exertion level as performed was actually "medium." She revised her opinion because the plaintiff's file indicated she was frequently lifting 25 pounds, and sometimes up to 50 pounds, in her work.  (Tr. 75-76).

The ALJ then posed a series of hypotheticals to the VE using residual functional capacity ("RFC") assumptions based on the plaintiff's past work and alleged limitations.  In the first hypothetical, the ALJ asked whether an individual of the plaintiff's age with the same past work experience and one year of college and who was limited to lifting/carrying 50 pounds occasionally and 25 pounds frequently, standing/walking with breaks for six hours a day, sitting with breaks for six hours a day, frequently climbing ramps or stairs, occasionally climbing ladders, ropes, or scaffolds, frequently feeling bilaterally, and occasionally exposed to extreme temperatures and hazards could perform the director of transportation job according to the DOT, as that job is generally performed in the national economy.  (Tr. 76-77).  The VE testified that this hypothetical individual could perform this work because the job is sedentary as performed in the national economy.  (Tr. 77).  In the second hypothetical, the ALJ further limited the standing/walking limitations to two hours a day and the lift/carry limitations to ten pounds occasionally and less than ten pounds frequently.  (Tr. 77-78).  The VE again confirmed this second hypothetical individual could still perform the director of transportation job as generally performed in the national economy.  (*Id.*).  However, the VE opined that this job could not be performed if the skill level of the work was limited to detailed but not complex tasks.  (Tr. 78).  Lastly, the VE opined that if the first hypothetical was limited to occasional feeling and "very occasional" use of keyboards, the

hypothetical could still perform the director of transportation job as generally performed in the national economy.  (Tr. 78-79).[5]

## III.    **THE ALJ'S DECISION**

The ALJ must follow a five-step evaluation process as promulgated by the Commissioner to determine whether a claimant is disabled within the meaning of the Social Security Act ("SSA"). *See* 20 C.F.R. § 404.1520(a).[6]  In this case, the ALJ determined that the plaintiff met the insured status requirements under the SSA through June 30, 2023.  (Tr. 31).

At step one, the ALJ found that the plaintiff had not engaged in substantial gainful activity since her alleged onset date of April 1, 2019.  (*Id.*).  At step two, the ALJ determined that the plaintiff had the severe impairment of peripheral neuropathy.[7]  (*Id.*).

At step three, the ALJ found that the plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.

---

[5] The Court notes that the ALJ and the VE continued at some length after these hypotheticals in a colloquy about the transferability of the plaintiff's skills to other jobs, (*see* Tr. 78-88), but this discussion is irrelevant because the ALJ concluded in the decision that the plaintiff could perform her past relevant work.

[6] An ALJ determines a claimant's disability using a five-step analysis. *See* 20 C.F.R. § 404.1520. First, an ALJ must determine whether a claimant is currently working. *See* 20 C.F.R. § 404.1520(a)(4)(i). If a claimant is currently employed, then the claim is denied. *Id.*  If a claimant is not working, then an ALJ must make a finding as to the existence of a severe mental or physical impairment. If none exists, then the claim is also denied. *See* 20 C.F.R. § 404.1520(a)(4)(ii). If a claimant is found to have a severe impairment, then the third step is to compare the claimant's impairment with those in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the Regulations ("the Listings"). *See* 20 C.F.R. § 404.1520(a)(4)(iii); *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987); *Balsamo v. Chater*, 142 F.3d 75, 79-80 (2d Cir. 1998). If a claimant's impairment meets or equals one of the impairments in the Listings, then the claimant is automatically considered disabled. *See* 20 C.F.R. § 404.1520(a)(4)(iii); *see also Balsamo*, 142 F.3d at 80. If a claimant's impairment does not meet or equal one of the listed impairments, then the claimant must show at the fourth step that she cannot perform her former work. *See* 20 C.F.R. § 404.1520(a)(4)(iv). If a claimant shows that she cannot perform her former work, then the burden shifts to the Commissioner to show at step five that the claimant can perform other gainful work. *See Balsamo*, 142 F.3d at 80 (citations omitted).  Accordingly, a claimant is entitled to receive disability benefits only if she shows that she cannot perform her former employment, and the Commissioner fails to show that the claimant can perform alternate gainful employment. *See* 20 C.F.R. § 404.1520(a)(4)(v); *see also Balsamo*, 142 F.3d at 80 (citations omitted).

[7] In addition, the ALJ determined that the plaintiff's stroke and degenerative disc disease of the lumbar and cervical spine were non-severe because her symptoms of stroke completely resolved, and the disc disease was being managed medically and was mild. The ALJ further determined that the plaintiff's "foggy thinking" or memory loss was not a medically determinable impairment because "mental status examinations at that time did not reflect any abnormality." (Tr. 32).

(Tr. 32).  In doing so, the ALJ considered listing 11.14, peripheral neuropathy.  (*Id.*).  *See* 20 C.F.R. part 404, Subpart P, Appendix 1, § 11.14.

Next, the ALJ determined that the plaintiff had the residual functional capacity ("RFC") to perform medium work as defined in 20 C.F.R. § 404.1567(c) but was limited to: "lifting and or carrying 50 pounds occasionally and 25 pound[s] frequently; standing and or walking with normal breaks for a total of six hours in an eight hour workday; sitting with normal breaks for a total of six hours in an eight hour workday; frequent climbing of ramps or stairs, balancing, kneeling, crouching, or crawling; only occasional climbing of ladders, ropes, or scaffolds; frequent feeling; and, occasional exposure to extreme cold, extreme heat, vibration, or hazards such as machinery or heights."  (Tr. 32).

At step four, based on the testimony of the VE, the ALJ found that the plaintiff could perform her past work as a director of transportation (DOT # 184.117-014; skilled, SVP 8, sedentary exertion) as generally performed in the national economy.  (Tr. 38).  As such, the ALJ determined that the plaintiff had not been under a disability since the alleged onset date.  (Tr. 39).  Thus, the ALJ ended the sequential evaluation process at step four and did not proceed to step five.

## IV.   <u>STANDARD OF REVIEW</u>

"To be considered disabled under the [SSA] and therefore entitled to benefits, plaintiff must demonstrate that she is unable to work after a date specified 'by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Young v. Berryhill*, No. 3:17-CV-00970 (SALM), 2018 WL 2947860, at *3 (D. Conn. June 12, 2018) (quoting 42 U.S.C. § 423(d)(1)(A)).  To be considered disabled, an individual's impairment must be "of such severity that he is not only unable to do his previous work but cannot, considering his

age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. §§ 423(d)(2)(A); *see also* 20 C.F.R. §§ 404.1520(c), 416.920(c) (requiring that the impairment "significantly limit[ ] ... physical or mental ability to do basic work activities[ ]" to be considered "severe").

"A district court reviewing a final . . . decision [of the Commissioner of Social Security] pursuant to section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), is performing an appellate function." *Zambrana v. Califano*, 651 F.2d 842, 844 (2d Cir. 1981). "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, [are] conclusive[.]" 42 U.S.C. § 405(g). Accordingly, the court may not make a *de novo* determination of whether a plaintiff is disabled in reviewing a denial of disability benefits. *Id.*; *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Court's function is to first ascertain whether the Commissioner applied the correct legal principles in reaching their conclusion, and then whether the decision is supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). Therefore, absent legal error, this court may not set aside the decision of the Commissioner if it is supported by substantial evidence.[8] *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). "Such a deferential standard, however, is not applied to the Commissioner's conclusions of law." *Muntz v. Astrue*, 540 F. Supp. 2d 411, 418 (W.D.N.Y Mar. 17, 2008) (quoting *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)). "This court must independently determine if the Commissioner's decision applied the correct legal standards in determining that the plaintiff was not disabled." *Id.*

---

[8] The Second Circuit has defined substantial evidence as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams on Behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Substantial evidence must be "more than a mere scintilla or touch of proof here and there in the record." *Williams*, 859 F.2d at 258.

## V.    **DISCUSSION**

The plaintiff raises seven arguments she contends warrant remand here: (1) that the Appeals Council erred as a matter of law when it failed to properly consider, evaluate and articulate its consideration of newly submitted evidence; (2) that the ALJ failed to fully develop the record and fully question the plaintiff regarding the physical and mental demands of the plaintiff's past relevant work under SSR 82-62; (3) that the ALJ misclassified the strength requirements of the plaintiff's past relevant work by the lightest duties performed, when, in fact, it was actually a composite job which also entailed more strenuous duties; (4) that the ALJ erred as a matter of law when he failed to request or encourage the plaintiff to obtain a medical source statement; (5) that the ALJ erred as a matter of law when he failed to resolve conflicting evidence; (6) that the ALJ erred as a matter of law when he failed evaluate whether the plaintiff's back, hip, and incontinence were non-severe at Step 2; and, (7) that the ALJ erred by ignoring lay witness statements when formulating the plaintiff's RFC.  (*See generally* Doc. 11-1 at 4-22).

Because the Court finds that remand is warranted to determine whether the plaintiff was performing a composite job, the Court will only address those additional arguments that are necessary to provide guidance to the ALJ on remand.[9]  In particular, the Court also concludes that (a) the ALJ had no duty to develop the record further and obtain a medical source statement but that the ALJ must consider Dr. Rubinstein's retrospective opinion on remand; (b) the ALJ must consider the statements of lay witnesses on remand; and (c) the ALJ properly considered the plaintiff's credibility.

---

[9] Specifically, because the Court is remanding on other grounds, the Court declines to reach the issues regarding potential errors by the Appeals Council, the ALJ's failure to consider allegedly conflicting evidence involving unexhibited agency decisions, and the ALJ's severity determination at Step 2.

### A.      Step Four – Classification of Past Relevant Work

The plaintiff makes two challenges to the ALJ's decision with respect to her past relevant

work.  First, the plaintiff argues that the ALJ failed to fulfill his duty under Social Security Ruling

("SSR") 82-62 by failing to elicit testimony about the duties of her past work during the hearing

and by not allowing the vocational expert to hear her testimony. (Doc. No. 11-1 at 7-10).  Next,

the plaintiff argues that "the ALJ's failure to consider whether [her previous relevant work] was a

composite occupation was a harmful error necessitating remand." (*Id.* at 10-13).  Specifically, the

plaintiff argues that the ALJ accepted the vocational expert's classification of her previous

occupation as director of transportation (DOT # 184.117-014, sedentary, SVP 8, skilled), when

her position was a composite job because it entailed more strenuous duties. (*Id.*)  As such, the

plaintiff contends that the ALJ misclassified the strength requirement of her past work when the

ALJ only considered the lightest duties performed in determining that she was capable of her past

relevant work. (*Id.*).

The Commissioner responds that "the record contained sufficient documentation regarding

[the] [p]laintiff's past work to support the ALJ's decision and this evidence was appropriately

considered by the ALJ and VE" in determining that she could perform her past work.  (Doc. No.

13-1 at 16).  Specifically, the Commissioner responds that "'[t]he inquiry . . . is not whether a

claimant is able to perform the duties of [his or] her previous job, but whether the claimant is able

to perform the duties associated with her previous "type" of work.'"  (*Id.* at 15) (quoting *Halloran

v. Barnhart*, 362 F.3d 28, 33 (2d Cir.2004)).  The Commissioner further responds that the ALJ

recognized that the plaintiff "could not perform her [past relevant work] as she actually performed

it at the medium exertional level" but "she could perform the Director of Transportation position

as it is generally performed, at the sedentary exertional level[.]" (*Id.* at 16).  The Commissioner states that "not every job that differs from a DOT description or falls under multiple DOT codes is a composite job."[10]  (*Id.* at 18).

At step four, "[t]he regulations provide that if a claimant can return to her past relevant work, 'either as the claimant actually performed it or as generally performed in the national economy,' then the claimant is not disabled." *Walterich v. Commissioner of Social Security*, No. 18-CV-1329, 2020 WL 2078795, at *3 (W.D.N.Y.  Apr. 30, 2020) (quoting 20 C.F.R. § 404.1560(b)(2)).  The burden is on the claimant "to show an inability to return to her previous specific job and an inability to perform her past relevant work generally." *Jasinski v. Barnhart*, 341 F.3d 182, 185 (2d Cir. 2003).

"Pursuant to both case law and Social Security Ruling 82-62, in order to determine at step four whether a claimant is able to perform her past work, the ALJ must make a specific and substantial inquiry into the relevant physical and mental demands associated with the claimant's past work, and compare these demands to the claimant's residual capabilities." *Long v. Berryhill*, No. 16-CV-760S, 2018 WL 618119, at *3 (W.D.N.Y. Jan. 30, 2018) (citing *Cline v. Colvin*, No. 13-CV-1060-JTC, 2015 WL 3937214, at *5 (W.D.N.Y. June 26, 2015)); *see also* SSR 82–62, 1982 WL 31386, *3-4 (S.S.A. 1982) ("Past work experience must be considered carefully to assure that the available facts support a conclusion regarding the claimant's ability or inability to perform the functional activities required in this work.").  SSR 82-62 provides, "In finding that an individual has the capacity to perform a past relevant job, the determination or decision must contain the

---

[10] The Commissioner further responds that the plaintiff could have challenged the vocational expert's classification of the plaintiff's past relevant work at the hearing. "Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record." *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996) (citation omitted).  This duty "exists even when the claimant is represented by counsel. . . ." *Id.*  The Court notes that the plaintiff appealed the ALJ's step four determination to the Appeals Council.

following specific findings of fact: (1) a finding of fact as to the individual's RFC; (2) a finding of fact as to the physical and mental demands of the past job/occupation; and (3) a finding of fact that the individual's RFC would permit a return to his or her past job or occupation." SSR 82–62, 1982 WL 31386, *3-4 (S.S.A. 1982). "The claimant is the primary source for vocational documentation regarding the skill level and exertional demands of the past relevant work." *Id. Accord Long*, 2018 WL 618119, at *3 (citation omitted).

However, "when significant variation exists between a claimant's description of her job and the DOT description of the job, it may be the result of a composite job." *Long*, 2018 WL 618119 at *4 (citation omitted). "A composite job contains 'significant elements of two or more occupations, and, as such, ha[s] no counterpart in the DOT.'" *Id*. (quoting SSR 82-61, 1982 WL 31387, at *2); *see also* Program Operations Manual System ("POMS") DI 25001.001(10) (defining a composite job as "[w]ork that required significant elements of two or more occupations and that has no counterpart in the DOT").[11]

"[I]n the context of composite jobs, the analysis is different." *Delgado v. Berryhill*, 3:17-CV-54(JCH), 2018 WL 1316198, at *17 (D. Conn. Mar. 14, 2018) (citation omitted). "Every occupation consists of a myriad of tasks, each involving different degrees of physical exertion. To classify an applicant's 'past relevant work' according to the least demanding function of the claimant's past occupations is contrary to the letter and spirit of the Social Security Act." *Weiser v. Berryhill*, No. 1:16-CV-00763(MAT), 2018 WL 6011163, at *3 (W.D.N.Y. Nov. 16, 2018) (citing *Long*, 2018 WL 618119, at *5 (quoting *Valencia v. Heckler*, 751 F.2d 1082, 1086 (9th Cir. 1985))). While the "Second Circuit has not yet discussed how an ALJ should assess composite

---

[11] The Second Circuit has held that "POMS guidelines are entitled to substantial deference, and will not be disturbed as long as they are reasonable and consistent with the statute." *Lopez v. Dep't Soc. Servs.*, 696 F.3d 180, 186 (2d Cir. 2012) (citation and internal quotation marks omitted).

jobs at step four . . . a number of courts have determined that, if past relevant work is a composite job, 'it is reversible error for the ALJ to make a Step Four finding that a claimant is not disabled merely because he or she can perform the tasks required for one of the two DOT job descriptions.'" *Delgado v. Berryhill*, No. 3:17-CV-54 (JCH), 2018 WL 1316198, at *18 (D. Conn. Mar. 14, 2018) (quoting *Long*, 2018 WL 618119, at *5). "Assessing whether past relevant work is a composite job or not is a fact-specific inquiry that depends on the particulars of the case." *Id.* at *19.

In this case, the job title of the plaintiff's prior relevant work was the director of transportation. (*See* Tr. 326). At step four, based on the testimony of the VE, the ALJ found that the plaintiff could perform her past work as director of transportation (DOT # 184.117-014; skilled, SVP 8, sedentary exertion) as generally performed in the national economy. (Tr. 38). While the ALJ stated that the VE based her testimony on the plaintiff's vocational background and the testimony at the hearing, the plaintiff alleges, and the transcript confirms, that the VE was not actually present for her testimony. The hearing was held telephonically due to the COVID-19 pandemic, and the ALJ did not contact the VE until *after* the questioning the plaintiff. (*Compare* Tr. 38 (explaining the VE's opinion was "[b]ased on the claimant's documented vocational background and the testimony"), *with* Tr. 56, 72 (showing that the VE was not contacted until after the plaintiff's testimony was taken and thus could not have heard it)).

The transcript shows that the ALJ did not ask the plaintiff to describe her previous job for the VE and instead asked the VE, "[H]ave you read the file regarding the claimant's work history?" (Tr. 75.). After the VE replied "yes," the ALJ asked the VE to "please summarize the claimant's past work and explain the scale and exertional level of it as was done by claimant, as that work is done, performed in the national economy?" (*Id.*). The VE identified the plaintiff's past work as director of transportation, DOT 184.117-014, SVP of 8, skilled, sedentary exertion in the national

economy, but medium as performed by the plaintiff.[12]  The fact that the ALJ and the VE both recognized that the plaintiff actually performed her job beyond even a light exertion level and at the medium exertion level "at the very least created a possibility that h[er] past work was a composite" job.  *Walterich*, 2020 WL 2078795, at *6.

Elsewhere in the record, the plaintiff identified additional duties of her position of director of transportation that were outside of those mentioned in the DOT description for a sedentary director of transportation. She would walk and stand for five hours each day, sit for three hours, lift 50-pound boxes, frequently lift 25-pound boxes, and use machines, tools and equipment.  (*See* Tr. 215-16).  Her testimony and the record also confirm that her duties included transportation of hazardous materials and delivery of fuel to state and federal locations.[13]  (Tr. 68, 326). Additionally, a SSA-3369 form submitted by the plaintiff on December 16, 2020, provides additional context and assertions showing her job was not sedentary and may have included duties of an additional position, Operations Manager.  (*See* Tr. 46-48).

The ALJ's failure to question the plaintiff further about her past duties leaves the record incomplete with respect to the frequency and duration of the additional duties and how "central each duty was to" her job.  *Delgado*, 2018 WL 1316198, at *19.  As such, the court concludes that the ALJ failed to comply with SSR 82-62 by making a specific and substantial inquiry into the

---

[12] Specifically, the VE replied, "From what I understand in review of the file, director of transportation, DOT 184.117-014, It's an SVP of 8, skilled. And according to the Dictionary of Occupational Titles, it's performed sedentary. However, in review of the file, it looks like . . . the claimant performed it at the light level because she was walking and stand[ing] most of the day." (Tr. 75).  The ALJ asked if the light exertional level was consistent with the plaintiff's indication "that she was frequently lifting 25 pounds in that work . . . and lifting up to 50 pounds being the heaviest weight." The VE responded, "No, I mean, then it, then it would go up to – I didn't see that part of it. But then it would go up to a medium, she was performing at medium." (*Id.*).

[13] Following the ALJ's decision, the plaintiff also provided an SSA form 3369-BK - Work History Report to the Appeals Council that gave further clarification of her duties.  (Tr. 46-48).  The Appeals Council denied the plaintiff's request for review, stating, without further explanation, "We find this evidence does not show a reasonable probability that it would change the outcome of the decision."  (Tr. 2).

relevant physical and mental demands associated with the claimant's past work. *See* SSR 82-61, 1982 WL 31387, at *2 (S.S.A. 1982) (stating that "there may be cases involving significant variations between a claimant's description and the description shown in the DOT. In some instances, an apparent variation may result from an incomplete or inaccurate description of past work. Employer contact or further contact with the claimant, may be necessary to resolve such a conflict.").

Moreover, in determining that the plaintiff could perform her past relevant work, neither the ALJ nor the vocational expert considered whether the DOT occupational title of director of transportation was accurate given the discrepancy between the plaintiff's job duties as the director of transportation and the DOT duties of the director of transportation. Instead, the ALJ questioned the VE on whether a person with the same RFC as the plaintiff's would be able to perform the director of transportation position as it is generally performed, which included only the least demanding function of the plaintiff's past work.

"[I]t is reversible error for the ALJ to make a step four finding that a claimant is not disabled simply because he or she can perform the tasks required for one of the two DOT occupations that comprise his or her past relevant work." *Weiser*, 2018 WL 6011163, at *3 (citing *Long*, 2018 WL 618119, at *5 (collecting cases)). In addition, other courts in this Circuit have reversed and remanded for further administrative proceeding where the ALJ failed to consider whether the plaintiff's past relevant work was a composite job or failed to provide sufficient findings on the duties performed. *See Long*, 2018 WL 618119 (remanding where the ALJ "neither acknowledged nor discussed the possibility of a composite job" and the ALJ did not make a "specific and substantial inquiry" to clarify the plaintiff's job duties at the hearing) (collecting cases); *Walterich*, 2020 WL 2078795 (remanding where the ALJ failed to consider the possibility that the plaintiff's

past relevant job was a composite job and because of the lack of testimony on the issue); *Weiser*, 2018 WL 6011163 (same); *Cheryl A. v. Commissioner*, 21-cv-01649, 2022 WL 1665159 (W.D.N.Y. May 25, 2022) (slip copy) (same); *Delgado*, 2018 WL 1316198, at *17 (remanding because the record does not "contain sufficient information to determine whether [the plaintiff's] past work should appropriately be considered a composite job because of the limited information as to his duties").[14]

"While the Commissioner may ultimately find that Plaintiff's previous relevant work was properly classified . . . or that it was not a composite job, sufficient evidence must be gathered and sufficient evidence must be provided to allow review of that decision." *Long*, 2018 WL 618119, at *5. Therefore, the Court grants the plaintiff's motion to reverse the Commissioner's decision and remands the case to the ALJ. On remand, the ALJ is instructed to further develop the record to determine whether the plaintiff's past relevant work was a composite job, and in turn, reconsider his step four analysis.

### B. Additional Issues

While the Court need not address the plaintiff's numerous other arguments, "the [C]ourt nonetheless addresses a few additional issues to guide the ALJ's consideration on remand in the interest of avoiding future remands." *Delgado*, 2018 WL 1316198, at *16.

---

[14] The Commissioner cites to two cases where the court declined to find that the plaintiff's past relevant work was a composite job. *See Johnson v. Colvin*, No. 13-cv-6319, 2014 WL 1394365, at *7 (W.D.N.Y. Apr. 9, 2014) (holding that the plaintiff's past work was not a composite because the plaintiff could perform two of the past jobs identified by the VE); *Noelle v. Comm'r of Soc. Sec.*, No. 15-cv-1301(GTSWBC), 2017 WL 9509957, at *8 (N.D.N.Y. Mar. 10, 2017) *report and recommendation adopted*, No. 15-cv-130, 2017 WL 945094 (holding that the plaintiff failed to show that her position was a composite job where the VE did not testify that plaintiff's past relevant work was a composite job and she did not question the VE's testimony during the hearing). However, these cases are not binding on this court, and are contrary to more recent cases in this district and Circuit. *See, e.g.*, *Delgado v. Berryhill*, No. 3:17-CV-54 (JCH), 2018 WL 1316198, at *18 (D. Conn. Mar. 14, 2018) (rejecting *Colvin* and similar cases).

###### 1.      Development of the Record

The plaintiff argues that the ALJ failed to develop the record and committed harmful error "at the hearing level" by failing to obtain an RFC opinion from the plaintiff's treating physicians, including Dr. Rubinstein, and by failing to "encourage" the plaintiff to obtain one.  (*See* Doc. No. 11-1 at 13-14).

"Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record." *DeMico v. Berryhill*, No. 3:17-CV-00805(SALM), 2018 WL 2254544, at *7 (D. Conn. May 17, 2018) (quoting *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996)).  However, "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." *Id.* (quoting *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999)) (citation and internal quotation marks omitted).  "Accordingly, the duty to develop the administrative record is triggered 'only if the evidence before [the ALJ] is inadequate to determine whether the plaintiff is disabled.'" *Id.* (citation omitted).  "When an unsuccessful claimant files a civil action on the ground of inadequate development of the record, the issue is whether the missing evidence is significant, and plaintiff bears the burden of establishing such harmful error." *Id.* (citation and internal quotation marks omitted).

Here, the plaintiff points to no "obvious gaps" or other dearth of evidence in the record before the ALJ that would have triggered his duty to develop the record and request an RFC assessment from Dr. Rubinstein or another treating physician.  Indeed, the ALJ cites treatment records from before and after the alleged onset date, including treatment notes from Dr. Rubinstein.  (*See* Tr. 35-38).   Nonetheless, in March 2021, the plaintiff submitted to the Appeals Council a

retrospective physical RFC opinion authored by Dr. Rubinstein.  (*See* Tr. 11-14; Doc No. 11-2, ¶ 54).  This opinion expressly relates to the timeframe of April 1, 2019, through December 29, 2020. (Tr. 11-14*.*)  Dr. Rubinstein indicated that the plaintiff was diagnosed with peripheral neuropathy, fibromyalgia, and chronic back pain. (Tr. 8, 11). He stated that the plaintiff had chronic leg pain. (*Id.*)  Dr. Rubinstein opined that the plaintiff's impairments were reasonably consistent with symptoms and limitations described, that the plaintiff's pain was constant, that she was limited to sitting or standing for one hour at one time (*i.e.*, before she needed to change positions), that she could sit and stand/walk for less than two hours in an eight-hour work day, that she should not lift more than 20 pounds, and that she was likely to be absent from work more than five days per month as a result of her impairments.  (Tr. 8-11).

As this opinion is now part of the administrative record before the Court and this case is being remanded, the ALJ is instructed to evaluate the opinion under the new regulations, 20 C.F.R. §§ 404.1520c and 416.920c, which apply to claims filed with the SSA on or after March 27, 2017. *See Delgado*, 2018 WL 1316198, at *15 (finding it "appropriate for the ALJ to revisit his conclusions at all steps of the Decision in light of the full record, including the new opinion evidence from one or more additional treating source" upon remand).

## 2.    Lay Witness Statements & Credibility

In formulating a claimant's RFC, SSA regulations provide that an ALJ "will also consider descriptions and observations of your limitations from your impairment(s), including limitations that result from your symptoms, such as pain, provided by you, your family, neighbors, friends, or other persons."  20 C.F.R. § 404.1545(a)(3).  *See* SSR 96-8P (S.S.A. July 2, 1996) ("The RFC assessment must be based on *all* of the relevant evidence in the case record, such as . . . lay evidence . . ." (emphasis in the original)).  "[A]n ALJ is free to accept or reject testimony . . . given by a lay

witness." *Recupero v. Saul*, No. 3:18-CV-01413(SALM), 2019 WL 2462812, at *5 (D. Conn. June 13, 2019).  However, "[a] finding that a witness is not credible must . . . be set forth with sufficient specificity to permit plenary review of the record." *Taylor v. Berryhill*, No. 3:17-CV-43 (JCH), 2017 WL 5900955, at *12 (D. Conn. Nov. 30, 2017) (quoting *Williams on Behalf of Williams v. Bowen*, 859 F.2d 255, 260-61 (2d Cir. 1988)).

Here, the plaintiff's husband and daughter each submitted lay witness statements using form SSA 795.  (*See* Tr. 307, 310).  The plaintiff's husband stated that he had "watched [his] wife decline the last 10 years." (Tr. 310).  He explained that she used to be able to do various outdoor activities like "ride a bicycle 32 miles a day" but that "she cannot do any of those things" and that "by 7PM at night she has to take the elevator up to our second [floor] and is normally in bed by 8PM." (*Id.*).  The plaintiff's daughter stated that she had seen her mother "struggle to get through the day," that "she used to be very active [and] feels bad not being able to do activities with her grandchildren." (Tr. 307).  Her daughter further stated that "over the years this has progressed to the point that impacts her daily abilities" and that "often times when we do anything that includes a lot of walking she stays home because it impacts the following days and her ability to complete her daily tasks." (*Id.*).  She explained that her mother "often times has to go to bed early when she is unstable." (*Id.*).  Both the plaintiff's husband and her daughter noted that the plaintiff was "stubborn" in the sense that they attempted to persuade her to stop working years prior, but she refused.  (Tr. 307, 310).  These lay statements generally corroborate the plaintiff's own hearing testimony.  (*See, e.g.*, Tr. 61 (stating, "My legs are very unstable."); Tr. 62, 66 (testifying that she could not climb stairs and required an elevator to be installed so she could get to her bed); Tr. 63-63 (testifying that she could not vacuum, clean toilets, or mop floors); Tr. 71 (stating that she was

typically in bed by 8:00 p.m.); Tr. 65 (characterizing herself as a "stubborn person" and that "to have to throw in the towel, [was] a very big decision, not to work")).

The plaintiff argues that the ALJ "totally ignore[ed]" these "witness statements in the record describing the [the plaintiff's limitations" and that the "ALJ's failure to articulate his consideration of the witness statements is harmful because the ALJ found [the plaintiff's] 'statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record.'" (Doc. No. 11-1 at 21 (quoting Tr. 34)).

As the Commissioner points out, the controlling regulations provide that an ALJ is "not required to articulate how we considered evidence from nonmedical sources." 20 C.F.R. § 404.1520c(d). But declining to articulate how evidence is considered is different from failing to consider the evidence at all. The ALJ's decision contains no credibility determination or other indication that the lay statements were accepted, rejected or otherwise ignored. (*See generally* Tr. 32-38). As this Court is performing an essentially appellate function, *Zambrana*, 651 F.2d at 844, the record is insufficiently developed to allow meaningful review of whether the ALJ actually considered the statements and rejected them, in which case he would be required to explain his reasons with "sufficient specificity," or whether he simply ignored the statements entirely. *Taylor*, 2017 WL 5900955, at *12. *See cf. Recupero v. Saul*, No. 3:18CV01413(SALM), 2019 WL 2462812, at *6 (D. Conn. June 13, 2019) (remanding so that the ALJ could articulate how he considered a social worker's hearing testimony where "it is not apparent how that testimony factored into his assessment of said evidence. Indeed, the court cannot tell if [that testimony] was not credited or simply ignored[]" (citation and internal quotation marks omitted)).

Here, this Court does not address whether an ALJ is required to provide a credibility determination as to lay witness statements and whether a failure to do so is harmful error. *Compare Burden v. Astrue*, 588 F. Supp. 2d 269, 278 (D. Conn. 2008) (opining that Second Circuit precedent in *Williams* "supports the proposition that an ALJ must make a credibility finding of lay witness testimony only when that testimony is critical to the adjudication of an application"), *with Thibault v. Astrue*, No. 5:10-CV-188, 2011 WL 5024460, at *4 (D. Vt. Oct. 20, 2011) (remanding and opining that *Williams* and other authority supports a remand where ALJ "did not specifically mention [a written statement from a lay witness] in his opinion or give reasons why he accepted or rejected any part of it[]"). Instead, as this case is already being remanded on other grounds, the Court directs the ALJ to "consider[] . . . the probative value, if any, of [the] lay witness statement[s]." *Thibault*, No. 5:10-CV-188, 2011 WL 5024460, at *6.

The plaintiff also briefly takes issue with the ALJ's credibility analysis as to her testimony. (*See* Doc. No. 11-1 at 21-22). The gravamen of the plaintiff's argument is that, in formulating the plaintiff's RFC, the ALJ cited to treatment notes prior to the alleged onset date that purportedly demonstrated inconsistencies with her allegations about her physical limitations. Specifically, the ALJ cites to treatment notes from before and after the alleged onset date showing the plaintiff running and performing childcare tasks for her grandchildren as evidence of her ability to do daily activities. (*Id.*; *see* Tr. 38).

To the extent there are conflicts in the record evidence, "[i]t is the function of the [Commissioner], not the reviewing courts, to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Thibault*, No. 5:10-CV-188, 2011 WL 5024460, at *6 (D. Vt. Oct. 20, 2011); *accord Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir. 1998) ("It is for the SSA, and not this court, to weigh the conflicting evidence in the record."). "While the ALJ

need not reconcile every conflicting shred of medical testimony, he must discuss the relevant evidence and factors crucial to the overall determination with sufficient specificity to enable reviewing courts to decide whether the determination is supported by substantial evidence." *Recupero*, No. 3:18-CV-01413(SALM), 2019 WL 2462812, at *4.   While the ALJ did cite to observations made in treatment notes prior to the alleged onset date, (*see, e.g.*, Tr. 34, 37), a review of the decision shows that the ALJ's did so to establish a longitude history of neuropathy and its treatment since 2009 and to establish the fact that the plaintiff repeatedly performed the same types of daily activities before and after the onset date.  (*Id.*).  Moreover, the ALJ explicitly considered a significant amount of other objective medical evidence, including treatment notes, medication regimens, nerve conduction studies, and physical examinations, from after the alleged onset date of April 1, 2019, along with the opinions of the state agency medical consultants, in determining the plaintiff's credibility about her neuropathy's limiting effects.  (*See* Tr. 35-38).  It is the province of the ALJ, not this Court, to weigh the evidence and resolve credibility issues.  The fact that the ALJ acknowledged some limited records outside the operative time frame fails to establish that his credibility determination was otherwise not supported by substantial evidence, which this Court concludes it was.[15]

### C.      Remand for Further Administrative Proceedings Is Appropriate

---

[15] The plaintiff's reliance on *Sanford v. Berryhill*, No. 3:18-CV-01019, 2019 WL 427322, at *8 (D. Conn. Feb. 4, 2019) (Merriam, J.) is unavailing here.  (*See* Doc. No. 11-1 at 21-22).  The portion of the decision cited by the plaintiff concerned error stemming from an ALJ giving the opinion of a non-reviewing state agency medical consultant "great" persuasive weight "to the exclusion of that of plaintiff's [long-time] treating physician[.]"  *Id.* at *8-9.  Specifically, the ALJ in *Sanford* erroneously relied on the claimant's *contradicted* testimony about performing "limited childcare activities" to find that the state agency consultant's stale opinion more worthy in determining that the claimant was not disabled.  *Id.* Here, the ALJ did not extrapolate limited testimony about childcare activities to erroneously bolster the opinion of a state agency consultant and to discount other treating physicians.  Rather, the ALJ cited the treatment notes as one piece of evidence out of many, showing that the plaintiff's testimony as to her alleged physical limitations was not entirely consistent with the record.

While the plaintiff requests that the Court enter an order reversing and remanding to the Commissioner for the payment of benefits, (Doc. No. 11), the Court declines to do so. "To award benefits, a district court must find that, irrespective of the legal error, the record contains 'persuasive proof' of the claimant's disability and 'a remand for further evidentiary proceedings would serve no purpose.'" *Sonia N. B. A. v. Kijakazi*, No. 3:21-CV-00709-TOF, 2022 WL 2827640, at *10 (D. Conn. July 20, 2022) (citing *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980)). The Court has reviewed the record and finds that the plaintiff has not provided persuasive proof that, during the relevant time period, she was disabled. There are outstanding issues that need to be resolved by the Commissioner with respect to whether the plaintiff's past relevant work constitutes a composite job and with respect to the ALJ's assessment of her RFC. As such, "[r]emand for calculation of benefits would [] be inappropriate." *Id*. In light of the above, the Court need not reach the merits of plaintiff's remaining arguments. Therefore, this matter is remanded to the Commissioner for further administrative proceedings consistent with this Ruling.

## VI.   <u>CONCLUSION</u>

The plaintiff's motion for an order reversing or remanding the Commissioner's decision (Doc. No. 11) is **GRANTED in part** and **DENIED in part** to the extent the plaintiff seeks remand for the payment of benefits. The Commissioner's motion to affirm that decision (Doc. No. 13) is **DENIED**. The Court remands the case to the Commissioner for further development of the record and consideration of any new evidence with respect to whether the plaintiff's past work was a composite job. In doing so, the ALJ shall reconsider his step four analysis, develop the record regarding the plaintiff's past work duties, including the frequency, duration, and centrality of those duties, and consider both the plaintiff's treating physician's opinion regarding her limitations and

24

the probative value of any lay witness statements. The Clerk shall enter judgment, remand this matter to the Commissioner, and close this case.

This is not a Recommended Ruling. The consent of the parties permits this Magistrate Judge to direct the entry of a judgment of the District Court in accordance with the Federal Rules of Civil Procedure. Appeals from this judgment can be made directly to the appropriate United States Court of Appeals. See 28 U.S.C. § 636(c)(3); FED. R. CIV. P. 73(c).

The Clerk is further instructed that, if any party subsequently appeals to this court the decision made after remand, the appeal shall be assigned to the undersigned as the parties have consented the Court's jurisdiction.

It is so ordered this 30th day of November 2022, at New Haven, Connecticut.

___/s Robert M. Spector_____
Robert M. Spector,
United States Magistrate Judge